Clause 50 COMMUNICATION AND ENTERTAINMENT:

The Charterers shall pay the Owners lumpsum of US$1,500 per month for all telecommunication fee and all entertainment fees for purpose of the Charterers business.

Clause 51 REDELIVERY NOTICE:

With reference to Clause 4, the Charterers to give the Owners thirty (30)/fifteen (15)/seven (7) days approximate prior notice concerning redelivery of the Vessel.

Clause 52 WAR CANCELLATION:

If war is declared or an outbreak of warlike hostilities between any of the great powers, involving any of the great powers – China, France, Great Britain, Germany, USA, Japan and the Russian Federation, either the Owners or Charterers to have option of cancelling this Charter Party without any compensation, provided, always, that, prior to such cancellation, either party shall give sufficient explanation to the other party and such war and warlike hostility herein shall be so severe as to substantially affect the purpose of this Charter Party.
In case the Vessel is trading in war or warlike zones, all additional premiums and crew bonuses are to be for the Charterers' account. The Charterers shall be entitled to have the benefit of any discounts received by the Owners for such premiums.
Neither the Owners'/Master's consent to such trade, nor the Charterers' payment of such costs, expenses and insurance shall be construed as an acceptance of any alteration, modification or lessening of all other existing rights and/or obligations of the parties under the Charter Party.

Clause 53 SMUGGLING:

Both the Owners and Charterers agree to exercise the highest degree of care and diligence to prevent or detect the smuggling of contraband on board the ship, in cargo or equipment carried on board during the voyage.
If, despite these efforts, contraband is discovered secreted aboard the ship, cargo or equipment carried resulting in delay to the voyage and/or the imposition of a fine and/or penalty, or notice of intention to impose a fine and/or penalty by governmental authorities, the parties agree that a rebuttable presumption shall arise in apportioning liability and all related losses, costs and expenses, including legal fees and expenses as follows:

(1) Contraband found within the area of the ship under the primary and exclusive control of the Owners, Officers and Crew to be 100% for the Owners' account.

(2) Contraband found within cargo or equipment introduced on board at the Charterers' direction to be 100% for the Charterers' account.

(3) Contraband found secreted on board the ship in areas of common access to both the ship and the shoreside personnel to be fifty (50)% for the Owners' account and fifty (50) % for the Charterers' account.

- Effective date on which the Owners to be signatories to USCIA to leave open until such be confirmed by the U.S. Customs Authority.
- Name of P&I also to leave open until such having been confirmed by the Owners.

It is expressly understood that each party shall have the right to submit evidence of specific acts of commissions or omission attributable to its own or the other party's employees, servants, etc. which have direct bearing on the placement contraband carried on board the ship.

The judicial/arbitral tribunal empowered to resolve disputes between the parties shall weight the proof submitted and if only the tribunal finds it to be clear and convincing evidence of direct involvement then may the tribunal conclude the application presumption outlined above to be rebutted and apportion liability as the evidence and justice dictate.

Both the Owners and Charterers warrant that they are signatories to the United States Sea Carrier Initiative Agreement with the U.S. Customs Service.

The Owners warrant that it is a member in good standing of (Owners' P&I name to be advised later) sufficient to cover liability for penalties arising from the carriage of contraband.

The Charterers warrant that it is a member in good standing of Assuranceforeningen Gard-gjensidig sufficient to cover liability for penalties arising from the carriage of contraband.

Clause 54 DELIVERY:

The Vessel shall be delivered by the Owners to the Charterers during 1st February, 2010 and 31st August, 2010.

The Owners to give advance notices of approximate date of the Vessel's delivery each upon three (3) months/one (1) month prior to the expected delivery date of the Vessel, in addition to notices of launching/completion of the Vessel subject to successful delivery of the Vessel from the Builder to the Owners.

Should the completion of the construction of the vessel be delayed due to causes categorized as Force Majeure in the shipbuilding contract, the canceling date under the charter party can be postponed automatically for the number of days of delay.

Clause 55 CONTRACT FOR TOWING / PILOT AND RETURN PREMIUM:

(A) The Charterers' privilege of removing any fittings, lashing or dunnages furnished by them at their time and expense.

(B) The Owners authorize the Charterers, as agents of and on behalf of the Owners, and on behalf of the Vessel, to arrange and contract for any towage, pilotage or like services on any usual or customary terms and/or those terms offered or required by towing companies employed where such services are furnished including, but not by way of limitation, so called pilotage Clauses such as those making pilots and tugboat captain and the like, or others, servants or the assisted vessel and of her Owners, and the Owners ratify any such contract made by the Charterers.



(C) The Charterers to have the benefit of:

Any return insurance premium(s) recoverable by the Owners from their underwriters by reasons of the Vessel being in port for a minimum of thirty (30) days, if on full hire for this period or pro rata for the time actually on hire.

Clause 56 GRACE PERIOD:

Where there is failure to make "punctual and regular payment" of hire, the Charterers shall be given by the Owners five (5) clear banking days written notice to rectify the failure, and when so rectified within those five (5) days following the Owners' notice, the payment shall stand as regular and punctual and the Owners will not withdraw the Vessel. It is understood that "Banking Days" means banking days in City of Tokyo.

Clause 57 NYPE INTERCLUB AGREEMENT:

Any cargo claims to be settled in accordance with New York Produce Exchange Interclub Agreement 1996 and any amendment thereto.
English law is to apply.

Clause 58 GRATINGS:

The Owners shall maintain the gratings in good condition, well fitting and sound. The gratings to be thoroughly inspected upon completion of discharge and damage, if any, to be properly repaired before next loading. It is understood that the Charterers are only responsible for stevedore-damage, providing the Master adhere to Clause 42 and pay cost of repairs thereof against the Owners claim-documents.
The Charterers or their representatives have the right to inspect the condition of the gratings at all times. The Vessel shall keep a sufficient stock of spare gratings and materials on board.
If the gratings are not permanently fixed, the grating's pieces are to be marked to enable identification when they are replaced.
Broken or damaged gratings located in the vessels hatch squares may only be exchanged for minimum half replacement grating boards.

Clause 59 MAINTENANCE OF CHARTETRERS' GEAR, EQUIPMENT AND/OR STORES:

The Master to keep a record of all gear, equipment and/or stores supplied by the Charterers and to maintain same in normal condition. Such gear, equipment and/or stores to be redelivered to the Charterers prior to redelivery of the Vessel to the Owners, or, if required by the Charterers, at any time during the period of the Charter in like normal condition as supplied (fair wear and tear excepted).

Clause 60 HIRAGE:

Time-Charter hire:   as mutually agreed between the Owners and Charterers and same is confirmed by a separate Addendum.

Clause 61 SPEED AND CONSUMPTION:

In case the Vessel becomes unable to maintain her speed and bunker consumption stipulated herein, except –
1) Any time during which the Vessel's speed is deliberately reduced to comply with the Charterers' order/requirement.
2) Any time during which the Vessel's speed is deliberately reduced for reason of safety while navigating within narrow waters or when assisting a vessel in distress or when saving life or property.
3) Any complete sea passage of less than twelve (12) hours.

The Owners shall clean her bottom afloat or in drydock at the Owners' option, if required by the Charterers, the cost and time incurred thereby to be for the Owners' account.  Should the Vessel however be unable to maintain speed and consumption fully banana laden in good weather and with windforce not exceeding Beaufort scale 4, the time lost and/or cost of extra fuel consumption may be deducted from hire after immediate assessment as agreed between the Owners and Charterers.

Clause 62 QUARANTINE:

Normal quarantine-time and expenses to enter a port to be for the Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness etc. of the Vessel's Master, Officers and Crew for the Owners' account.

The Vessel shall be in possession of necessary certificates to comply with safety and health regulations and all current requirements at all ports of call during this Charter.

If any special vaccinations against yellow fever, cholera or other is required, the Master, Officers and Crew to be vaccinated at the Owners' expense and corresponding certificates to be on board.

Clause 63 LAY-UP:

The Charterers shall have the liberty to order the laying-up of the Vessel at a berth or port for any period of this Charter.   If so requested by the Charterers, the Owners will estimate savings taking into account reductions in insurance and manning costs as well as extra costs for decommissioning and recommissioning.   If the Vessel is laid up, the Charter hire shall be reduced by the estimate savings as given by the Owners prior to lay-up for such laying-up period.

Should the Vessel be laid-up continuously in tropical water for more than thirty (30) days or other water for more than forty (40) days as per this clause, the Charterers to accept speed reduction and/or excessive consumption otherwise the Charterers to conduct underwater cleaning at their time/expenses. If performance still not improved, then the Owners to absorb costs to the Charterers of any decrease in speed or increase in consumption.

Clause 64 CAPTURE / SEIZURE / ARREST:

No hire shall be payable for delay caused by the Vessel being captured, seized, arrested or detained in any other way whatsoever by a person, party, organization, or Government in pursuance or in consequence of any interest in or claim or complaint against or dispute with the Vessel or her Owners or any party related thereto or the Government of the nation under whose flag the Vessel is sailing. Any extra expenses and all consequences incurred by and/or during the above capture or seizure or detention or arrest shall be for the Owners' account.

Notwithstanding the above, should a delay through capture, seizure or arrest as a result of the Charterers' and/or their act, omission or default arise, then the Charterers should solve the matter without interrupting payment of the Vessel's Charter hire.

Clause 65 EXCEEDING PERIOD:

Should the vessel be ordered on a voyage by which the charter period will be exceeded the charterers to have the use of the vessel to enable them to complete the voyage, provided that it could reasonably be calculated that the voyage would allow re-delivery about the time fixed for the termination of the charter. For any time exceeding the latest termination date the charterers to pay hire at the level agreed in this charter party.

Clause 66 P & I CLUB:

The Owners warrant that throughout the currency of this Charter, the Vessel will be entered with Shipowners' Protection and Indemnity Club within the International Group and Hull and Machinery Insurance will be placed with the first-class Underwriters at the Owners' option.

Normal War Risk Insurance on Hull and Machinery and Crew to be for the Owners' account, but any extra War Risk Insurance of Extra Crew War Risk Insurance and/or bonus due to the Vessel's trading in the Charterers' service to be for the Charterers' account.

The Charterers to have the benefit of the Owners' Protection and Indemnity Association as far as its Rules permit.

Clause 67 BUNKERS ON DELIVERY / REDELIVERY:

The Vessel to deliver to the Charterers with bunkers as on board and to be redelivered to the Owners at termination of Charter with about the same quantities F.O. and D.O. as on delivery to the Charterers but always sufficient to reach nearest bunkering port.

The Charterers on delivery and the Owners on redelivery to take over and pay for all fuel and diesel remaining on board at actual purchased prices supported by copies of original invoices backed by the evidences.